**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| CHRISTOPHER SHORTER, | : | **CIV. NO. 17-8911(RMB)** |
| Plaintiff | : | |
| v. | : | **OPINION** |
| UNITED STATES OF AMERICA, *et al.*, | : | |
| Defendants | : | |

**BUMB**, DISTRICT JUDGE

This matter comes before the Court upon Plaintiff's motion to amend his complaint. (Pl's Mot. to Amend, ECF No. 7.) On October 23, 2017, Plaintiff Christopher Shorter ("Plaintiff"), a prisoner incarcerated in FCI Miami at the time of filing, filed a civil rights complaint against ten prison officials at the Federal Correctional Institution ("FCI") Fort Dix and an FTCA claim against the United States. (Compl., ECF No. 1.) Plaintiff did not submit a complete application to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915(a), so the Court administratively terminated this action, subject to reopening. (Opinion, ECF No. 2; Order, ECF No. 3.) The Court also pre-screened Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), reserving conclusive screening until such time as Plaintiff either paid the filing fee for a civil action or submitted a properly completed IFP

application. (Opinion, ECF No. 2 at 2.) The Court found that Plaintiff failed to state a Bivens claim but sufficiently alleged an FTCA claim against the United States.

On May 15, 2018, the Court granted Plaintiff's renewed IFP application and her motion for leave to file an amended complaint. (Order, ECF No. 6.) When Plaintiff filed an amended complaint, she filed the present motion to amend. (Mot. to Amend, ECF No. 7.) The Court will grant Plaintiff's motion to amend and screen her Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

When a prisoner is permitted to proceed without payment of the filing fee, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) require courts to review a complaint in a civil action and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief.

I. *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering

2

why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If

a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II. DISCUSSION

    A.   The Amended Complaint

Plaintiff realleges the facts alleged in her original complaint, which this Court discussed in an Opinion on April 9, 2018, and determined that Plaintiff failed to state a Bivens claim. (Opinion, ECF No. 2.) In sum, Plaintiff is a transgender inmate, male to female, who was incarcerated at FCI Fort Dix on October 14, 2015, when she was allegedly sexually assaulted by another inmate because the defendants failed to protect her by placing her in an unlocked cell. (Am. Compl., ECF No. 7-1.) She was unable to hold the perpetrator accountable due to the negligent investigation of the incident by the defendants. (Id.)

Plaintiff contends that the defendants failed to protect her and failed to properly investigate the sexual assault in violation of her rights under the Fifth and Eighth Amendments. For her Bivens' claims, Plaintiff named the following as defendants: Warden Jordan Hollingsworth, Associate Warden Christine Dynan, Associate Warden Robert Hazelwood, Chief of Psychology Dr. Marantz, Captain Pena, Lieutenant Bittner, Counselor Hamel, Dr.

4

Carl Sceusa, Unit Manager Byrd, and John Doe PREA Compliance Manager. Below, the Court recites only the new allegations in the Amended Complaint.

The cells at FCI Fort Dix do not have locks on the doors. (Am. Compl., ECF No. 7-1 at 12.) On July 13, 2015, Plaintiff notified the defendants that she was very uncomfortable showering around the other inmates and she felt that she was being placed at high risk due to violence in the institution and being housed without a lock on the cell. (Am. Compl., ECF No. 7-1 at 12, citing Ex. 2.)[1] Counselor Hamel made housing decisions that placed Plaintiff in harms way. (Id., citing Ex. A.)

On August 18, 2015, Plaintiff requested an expedited transfer to a facility with secure housing and placed the defendants on notice of her safety concerns. (Id., citing Ex. B.) On September 10, 2015, Plaintiff expressed her concern that there was no urgency to transfer her to more secure housing. (Am. Compl., ECF No. 7-1 at 12, citing Ex. E.) On September 21, 2015, the Gender Identity Dysphoria Committee determined that Plaintiff should be

---

[1] Exhibit 2 to the Amended Complaint is a clinical note regarding Plaintiff's treatment in FCI Fort Dix's Psychology Services. (Am. Compl., Ex. 2, ECF No. 7-5 at 38.) The clinical note does not state that Plaintiff felt she was being placed at high risk due to violence in the institution, but it states, "she endorsed concern that she will be sexually harassed or abused" and she requested a smaller cell and "undergarments to keep nipples from showing." (Id.)

transferred because the facility, due to its physical layout, could not provide the same type of supervision as other institutions. (Am. Compl., ECF No. 7-1 at 13, citing Ex. F.)[2]

On October 5, 2015, Associate Warden Robert Hazelwood placed a memo on the inmates' computer system informing them that visiting privileges on the East and West compounds were suspended due to security concerns, including repeated assaults on staff. (Am. Compl., ECF No. 7-1 at 13, citing Ex. H.) Plaintiff alleged "this notice was related to all the violence and violent assaults and sexual abuse rampantly occurring at FCI Fort Dix." (Id.) Associate Warden Hazelwood placed another memo on the inmates' computer system on October 8, 2015, stating

> Notification  Over the past several weeks, there has been significant increase in security issues involving staff and inmate assaults as well as hard contraband such as cell phones and weapons. [S]taff have responsibility to provide a safe and secure environment to all staff, visitors, and inmates.

(Id., citing Ex. I.)

    B.    <u>Bivens Claims</u>

        1.    Eighth Amendment Failure to Protect

---

[2] Exhibit F, Plaintiff's request for transfer, indicates that Plaintiff's projected release date, via good conduct time release, was October 27, 2018. (Am. Compl., Ex. F, ECF No. 7-5 at 5.)

6

The Eighth Amendment's prohibition on cruel and unusual punishment requires prison officials to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994)(internal quotations omitted). To state a claim under the Eighth Amendment against a prison official for failure to protect an inmate from violence, an inmate must plead facts showing that (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. <u>Bistrian v. Levi</u>, 696 F.3d 352, 367 (3d Cir. 2012).

To establish the subjective standard of deliberate indifference, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." <u>Id.</u> (quoting <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 125 (3d Cir. 2001)). Actual knowledge can be shown by circumstantial evidence where (1) "'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and (2) where 'circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.'" <u>Counterman v. Warren County Correctional Facility</u>, 176 F. App'x 234, 238 (3d

7

Cir. 2006) (quoting Beers-Capitol, 256 F.3d at 131 (quoting Farmer, 511 U.S. at 837)). Inquiry into the risk of harm, as opposed to the defendant's knowledge of it, is objective. Id.

The facts alleged by Plaintiff in support of deliberate indifference to her safety in her original complaint were that (1) the defendants knew she was a transgender inmate who had been subject to sexual assault by staff in another correctional facility; (2) Plaintiff was placed alone in an unlocked cell far from the officers' station; (3) Plaintiff alerted the defendants to her general fears for her safety as a transgender inmate in a facility without locks on the cell doors; (4) Plaintiff alerted the defendants about other inmates' comments about her body and (5) the defendants refused to permit Plaintiff to use a make-shift lock on her cell. (Opinion, ECF. No. 2 at 9-10.) In the Amended Complaint, Plaintiff alleged that on October 5, 2015, Associate Warden Robert Hazelwood issued a notice suspending inmates' visiting privileges due to security concerns, including repeated assaults on staff. (Am. Compl., ECF No. 7-1 at 13, citing Ex. H.) Although Plaintiff alleged "this notice was related to all the violence and violent assaults and sexual abuse rampantly occurring at FCI Fort Dix" (id.), Plaintiff attached a copy of the Notice to the Amended Complaint and the Notice pertains only to "repeated assaults on staff." (Am. Compl., Ex. H, ECF No. 7-5 at 7.)

Plaintiff also refers to a second notification to inmates in October 2015 that warned of a significant increase in security issues over the past several weeks "involving staff and inmate assaults." Like the first notification, the second notification does not mention any sexual assaults. Plaintiff's allegation that there was a recent increase of inmate violence is insufficient to demonstrate that a substantial risk of sexual assault on a transgender inmate was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." See Blackstone v. Thompson, 568 F. App'x 82, 84 (3d. Cir. 2014) (per curiam) (quoting Farmer, 511 U.S. at 842) (risk that an inmate with some history of violence might attack another inmate for an unknown reason was too speculative to give rise to an Eighth Amendment claim); see also Bracey v. Pennsylvania Dept. of Corr., 571 F. App'x 75, 78 (3d Cir. 2014) (per curiam) (nine incidents of inmate assaults in exercise yards over two-year period was not pervasive and well-documented risk of inmate attacks.)

In Fletcher v. Phelps, the Third Circuit Court of Appeals held that even if it could be inferred that the plaintiff was at a greater risk of harm from other inmates due to his sexual orientation, the plaintiff's Eighth Amendment failure to protect claim failed where the only evidence of risk of harm was the plaintiff's statements that another inmate touched him and

9

harassed him for sex. 639 F. App'x 85, 88 (per curiam) (3d Cir. 2015). Similarly, in a case before the Southern District of Illinois, a failure to protect claim failed where the plaintiff alleged "some inmates assault transgender inmates when assigned to share a cell," and that other inmates had verbally harassed the plaintiff and made sexual gestures. Cole v. Tredway, Case No. 14-CV-1059 (MJR-RJD), 2016 WL 7118946 at *5 (S.D. Ill. Dec. 7, 2016). Significantly, the plaintiff in Cole did not claim anyone threatened him with involuntary sexual contact. Id.

Plaintiff's claim here is like those in Fletcher and Cole because Plaintiff had generalized fears of being at risk of sexual assault based on her transgender identity. She alleged some verbal harassment by other inmates but there were no specific threats against her that required the defendants to take measures to protect her. Plaintiff has not alleged facts that indicate the defendants were deliberately indifferent to a substantial risk that an inmate would sexually assault her. The Court will dismiss the Eighth Amendment failure to protect claim without prejudice for failure to state a claim.

2. Fifth Amendment Due Process

Plaintiff asserts her Fifth Amendment right to Due Process was violated because she could not hold Inmate Michael Garcia accountable for sexual assault due to the faulty investigation

conducted by the defendants. (Am. Compl., ECF No. 7-1 at 10-11.) The only defendants whom Plaintiff alleges were personally involved in investigating her sexual assault are Lieutenant Bittner, Dr. Carl Sceusa and John Doe PREA Compliance Manager. (Id., ECF No. 7-1 at 13-19.) See Iqbal, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") The Fifth Amendment claims against the remaining individual defendants will be dismissed without prejudice.

A Fifth Amendment Due Process Claim for failure to properly investigate a sexual assault allegation in prison is a new Bivens context subject to the analytical framework described by the Supreme Court in Ziglar v. Abbasi[3] before a Bivens remedy may be implied.[4] Before permitting a Bivens claim to proceed in a new

---

[3] 137 S. Ct. 1843 (2017).

[4] The Supreme Court defined the test:

> The proper test for determining whether a case presents a new Bivens context is as follows. If the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new.

137 S. Ct. at 1859. The Supreme Court has only recognized three Bivens contexts: (1) to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures; (2) to compensate under the Fifth Amendment Due Process Clause an administrative assistant who sued a Congressman for firing her because she was a woman; and 3) to compensate a

Bivens context, a court must conduct a special factors analysis. Abbasi, 137 S. Ct. at 1859. The Court will permit the Fifth Amendment claim to proceed but reserves the determination of whether to imply a Bivens remedy for Plaintiff's Fifth Amendment claim until the defendants have been served with the Amended Complaint and have an opportunity to brief the special factors analysis under Abbasi, and Plaintiff is afforded an opportunity to respond.

    C.    Federal Tort Claims Act ("FTCA") Claims

"[A]s part of the Prison Litigation Reform Act . . . section 1346(b)(2) of the FTCA precludes inmate tort actions against the United States for 'mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act,' 28 U.S.C. § 1346(b)(2)." West v. United States, 729 F. App'x 145, 148–49 (3d Cir. 2018), reh'g denied (May 9, 2018) (per curiam). Plaintiff's FTCA Claim based on negligence by federal employees resulting in her sexual assault by another inmate may proceed past screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Plaintiff's claims based on negligent investigation of her sexual assault will be dismissed with

---

prisoner's estate under the Eighth Amendment Cruel and Unusual Punishments Clause for failure to treat the prisoner's asthma. Id. at 1854-55 (citing Bivens, 403 U.S. at 397; Davis v. Passman, 442 U.S. 228 (1979); and Carlson v. Green, 446 U.S. 14 (1980)).

prejudice because Plaintiff does not allege that she suffered a physical injury when the defendants failed to properly investigate her sexual assault.

III. CONCLUSION

The Court will grant Plaintiff's motion to amend the complaint. Plaintiff's Fifth Amendment Due Process claim for failure to properly investigate her sexual assault may proceed against Lieutenant Bittner, Dr. Carl Sceusa and John Doe PREA Compliance Manager; and her FTCA claim against the United States for negligence resulting in her sexual assault by another inmate may proceed against the United States. Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court will dismiss without prejudice Plaintiff's Eighth Amendment failure to protect claim and dismiss with prejudice Plaintiff's FTCA claim for failure to properly investigate her assault.

An appropriate order follows.

DATE January 22, 2019

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**
